PANTALEÓN GONZÁLEZ and his wife JOSEFA ROIG, Plaintiffs and Appellants, v. UNITED STATES CASUALTY Co., Defendant and Appellee.

No. 7783.    Argued November 8, 1939.—Decided November 27, 1939.

F. *Fernández Cuyar*, for appellants. R. *Castro Fernández* and *José López Baralt*, for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

The plaintiffs obtained judgment against the P. R. Dairy, Inc., for the amount of $2,500.00 as damages for the death of their son Marino González Roig, which occurred on the road from Río Piedras to Carolina on January 22, 1932, when a car collided with a truck belonging to said company. Once the judgment was final the plaintiffs moved for and were allowed the corresponding order for the carrying out of the judgment, which was returned uncomplied with because the company was under judicial administration.

The bus which caused the death of the plaintiffs' son was insured by a policy in force on the day of the accident and issued by the U. S. Casualty Co.

To collect the judgment from the U. S. Casualty Co., to which we will refer as "the insurer", the plaintiffs filed this suit. The insurer opposed the pretensions of the plaintiffs alleging that the insured had not complied with the conditions of the policy, to wit:

"Paragraph 3.—The company will defend, in the name of and for the benefit of the insured, all claims or actions for damages for which the insured be legally liable and will pay, within the limits of this policy, any judgment rendered against said insured for said damages as well as the costs which may be awarded by the court, its proportionate share of the interest of the judgment, up to the date

of payment or offer of payment by the company and any other expenses incurred with the written consent of the company and it will also provide the insured with the amount of any expenses he may have incurred in first-aid.

"         *         *         *         *         *         *         *

"Condition C.—Upon the occurrence of an accident covered by this policy the insured will immediately give the company written notice with as much information as possible. If some claim is made as a consequence of an accident, the insured will immediately send the **company all the information** he may have, the summons or any other notice, as soon as he receives it. The insured will not assume any liability nor incur in any expense except for first aid in case of an accident, nor will he settle any claim unless he is going to pay it, nor will he intervene in settlement or judicial proceedings unless so required by the company and he promises to help the company in obtaining information and evidence, and to provide witnesses and shall cooperate with the company (with the exception of the expenses) in any matter which the company may think such cooperation necessary for an investigation, defense or appeal covered by this policy.

"Condition D.—In case the insured becomes insolvent or bankrupt the company will not be exempted from the payment of any indemnity covered by this policy which the insured may have to pay. If by reason of such insolvency or bankruptcy any judgment against the insured were returned unpaid in any suit by an injured party or by any person claiming in the name of or for the injured, then the suit may be taken by the injured party or by any other person, against the company within the conditions of this policy for the amount of the judgment but never in excess of the amount covered by this policy.

"Condition H.—No alteration of the conditions, terms or limits of this policy will be valid without the signature of one of the executive officers of this company. If the condition of this policy in regard to the time or limit of time to give notice were in conflict with the law of the country having jurisdiction in the matter, such statutory provision shall take the place of the provision or condition of this policy."

After the trial, the lower court dismissed the complaint against the insurer on the pleading and the evidence, holding that according to the evidence the insured had not com-

plied with its obligation to notify the insurer immediately upon receiving notice of the suit, sending them the summons and copy of the complaint, thereby impeding the insurer from assuming the defense of the case through its attorneys.

Against this second judgment, that is, the one dismissing the complaint against the insurer, the plaintiffs filed this appeal.

■ That the negligence of the insured was the proximate cause of the accident is a question which is not denied in this appeal and is accepted by the appellee. The questions to be decided in this appeal being the following: Did the insured comply *substantially* as alleged by the plaintiffs (complaint, paragraph 7), with the conditions of the insurance contract in such a manner that the insurer cannot refuse to comply with it? Did plaintiffs prove that the P. R. Dairy, Inc. was insolvent when the execution order was returned without being carried out?

The insurer accepts that the insured notified it of the accident opportunely and that it sent its employee, Mr. Heriot, to make the necessary investigation (testimony of Simonpietri, statement of the case, page 27).

Mr. Noa, the person who served the summons by delivering a copy of the complaint and of the summons to the Attorney Luis Toro Cabañas as secretary of the P. R. Dairy, Inc., testified that Mr. Toro Cabañas, in the presence of the witness, called Mr. Simonpietri, the agent of the insurer, on the telephone and notified him that he had received the summons and a copy of the complaint and requested him at the same time to send for said documents because his messenger was not in the office at the moment. Mr. Noa assured that he naturally could not hear or see the person talking on the telephone with Toro Cabañas. He only heard the latter's part of the conversation. (Statement of the case, page 20). It was stipulated that the Attorney Fernández Cuyar, attorney for the plaintiffs, who was in Toro Caba-

ña's office at the time the summons was served and when the alleged telephone conversation was made would testify the same as the witness Noa.

Mr. Heriot as well as Simonpietri denied that they had received the message from Toro Cabañas, stating that the first notice that they had of the filing of the suit against the insured was when they received on April 5, 1933, the letter dated the third of said month and signed by the Attorney Carlos J. Torres (exhibit 4 of the plaintiffs) and which literally reads as follows:

"Under policy No. PRRA 3001, you covered the truck Day-Elder, chassis No. 3130, motor No. 16–C–13982, the property of the P. R. Dairy, Inc. against accidents.

"This corporation from December 22, 1932, is in receivership and in taking possession of the property and documents of said corporation, the receivers find that there is a suit against the corporation filed by the spouses Pantaleón González and Josefa Roig de González for damages, civil No. 17,581, before the District Court of San Juan, wherein among other things, damages for $10,000 are prayed for as the result of the killing by this truck of a young man called Marino González Roig. As in these cases you are in the hab·t of using your own at·-torneys, I expect you to give us the instructions which you may consider pertinent unless you think that I should continue the case because I have a better knowledge of the facts involved.

"Awaiting your reply, I rema·n, yours truly . . ."

In the exhibit 4 of the plaintiffs which we have just copied, the Attorney Carlos J. Torres makes no mention whatsoever of the telephone conversation that the plaintiffs alleged Toro Cabañas had with Simonpietri. Notwithstanding the fact that Carlos J. Torres testified that he was present when Toro Cabañas was served and that he heard the telephone conversation between Toro and Simonpietri and that he knows that it was Simonpietri who answered for the insurer (statement of the case, page 14), the letter of April 22, 1933, also signed by the Attorney Carlos J. Torres and addressed to the insurer (exhibit 6) tends to show that he knew of the telephone conversation through Toro Cabañas and after

having received from the insurer the letter of April 20, 1933, (exhibit 5 of the plaintiffs) in which the latter alleged that the insured had not complied with the obligation of notifying it of the filing of the suit and of sending it the necessary documents. The letter of Mr. Torres (exhibit 6), says:

"I refer to your letter of April 20, 1933.

"In a conversation had with the Attorney Toro Cabañas in regard to its contents *he has informed me that immediately after the accident, he notified you and likewise he also notified you that the complaint for damages had been filed against the company.*

"This being the state of affairs, you may make whatever decision you think right.

"I wish to call your attention to the fact that this is a case in which the company, with very little trouble, could come out very well since there is no liability whatsoever on the part of the employees of the company since it was not even the truck of the company which killed the young man to which the complaint for damages refers.

"I also wish to inform you for your own benefit that the P. R. Dairy, Inc. is in receivership and that it probably will not be able to pay a judgment against the corporation in its present state and that independent of the attitude which you may assume, you will probably find yourself involved in another suit for not having intervened in one which would be very easy to decide satisfactorily."

Another letter of March 11, 1935 (plaintiffs' exhibit 8) in which the Attorney Carlos J. Torres notified the insurer that judgment had been rendered against the insured for $2,500, states in its last paragraph:

"As my clients are under the belief that the clause under which you rely to evade the liability for the payment of the judgment in this case is one which will necessarily be annulled by the court when this suit is filed, we have notified you of all our proceedings so that you might not later allege lack of knowledge."

The lower court, in weighing the testimony of Noa in regard to the fact that he could neither see nor hear the person who answered Toro Cabañas by telephone, that of

Attorney Carlos J. Torres, which is inconsistent with his own letter, and the negative testimony of Simonpietri and Heriot assuring that they did not receive nor had notice of such a telephone conversation, believed the witnesses of the defendant insurer and in so deciding the question we are unable to uphold that it committed a manifest error nor that it was moved by bias, prejudice or partiality. Therefore, we must accept as a basis in this suit that the defendant insurer was not notified of the filing of the same against the insured until April 5, 1933, when it received the letter dated two days previously (plaintiffs, exhibit 4).

In its brilliant brief, learned counsel for the plaintiffs honestly states as follows:

"The plaintiffs frankly and honestly accept that the general doctrine is to the effect that the insured cannot recover from the insurer if it has not complied with the essential conditions of the policy and also that if the insured cannot recover for this reason neither could the aggrieved prejudiced party."

That is in effect the doctrine upheld by the majority of the jurisdictions in the United States. In the annotation most recently published by American Law Reports, in 106 A.L.R. 516, 532, it is affirmatively stated that that is the majority doctrine and it is thus put forth:

"The majority doctrine that the injured person, absent collusion between insurer and insured, stands in the shoes of the insured as regards defenses based on breaches of conditions subsequent to the accident, except where the effect of insured's failure to comply may be avoided by compliance by the injured person himself, is supported by most of the cases decided within the period covered by the present annotation. As was true of the cases cited in the earlier annotation in support of the majority doctrine, some of the later cases expressly declare it, and others assume it by disposing of the defenses asserted by the insurer in the action by the injured person, upon the same considerations that would have controlled if the action had been by the assured. In some instances these considerations have led to a decision against the injured person; in others, to a decision in his favor."

See also the case of *Rondón* v. *Aetna Casualty & Surety Co.*, 46 P.R.R. 593, and especially the citation made on page 607 of Judge Cardozo's opinion, delivered in the case of *Coleman* v. *New Amsterdam Casualty Co.*, 247 N.Y. 271.

As was said in the case of *Rondón* v. *Aetna Casualty & Surety Co., supra:*

"To interpret the contract in this case as though the policy by reason of Rule III of the 1924 Regulations imposed liability directly in favor of the injured person, without the necessity of first establishing that the assured complied with his obligations to the insurer, would be, we repeat, clearly unjust, to the insurer under all the circumstances." (Pages 609–610.)

■ Plaintiffs' attorney argues that admitting for the sake of argument that the insurer was not notified of the suit until April 3, 1933, yet it had ample opportunity to defend itself amending the answer already filed if it so wished and continuing the case until its final decision.

The plaintiffs forget that the legal situation of the insurer defendant in taking charge of the suit after the sworn answer had been filed (exhibit C of the defendant, statement of the case p. 37), was not as it would have been if it had initiated the proceedings. The principal pleadings of a suit, that is, the complaint and the answer, from the basis on which the theory of the parties must rest and once these sworn pleadings are filed, even though they may be susceptible to amendments, it is difficult to successfully vary the entire theory of the case for the plaintiff or defense. When the insured notified the insurer of the existence of the suit, the insured had already filed its sworn answer by virtue of a certain agreement with the plaintiffs so that the default which had been rendered would be annulled. If the insurer had amended the answer as the plaintiffs pretend it could have done, the allegations of the original sworn answer would undoubtedly had been admissible to contradict any new matter of defense which might have been alleged by the insurer in representation of the insured and in any manner what-

soever incompatible with the allegations or defenses set forth in the original sworn answer. 1 Jones on Evidence (4th edition), page 513, and especially note 18.

Nor has the defendant insurer had the same opportunity to defend itself in this suit which it would have had if it had intervened when the suit was filed against the insured, for although it is true that in the case before us all the evidence relating to negligence was presented, yet the amount of the damages was *res judicata* for the defendant insurer since the object of this suit is not to recover the damages actually suffered by the plaintiffs but the amount of a final and executory judgment. See the complaint in this case (judgment roll, page 1).

█ Lastly, the plaintiffs maintain that the insurer appeared in the first trial through its agent, Mr. Heriot, and brought all the data, photographs, sworn testimonies, etc. in regard to the accident and that this attitude of the defendant, insurer of cooperation with the insured in that suit constitutes a waiver of the conditions of the policy.

For the foregoing reasons, in our opinion, the judgment appealed from should be affirmed.